**HERSH v. STEINAU et al. (LOUISIANA IRON & SUPPLY CO. et al., Interveners).***

No. 4027.

Court of Appeal of Louisiana. Second Circuit, Second Division.

March 16, 1932.

William O. Boone, of Homer, for appellant.

Albert P. Garland, of Shreveport, and T. T. Land and Atkins & Meadors, all of Homer, for appellees.

STEPHENS, J.

On December 6, 1929, the plaintiff filed suit against the defendants, Henry G. Steinau, Basil M. Wilder and L. C. Tharpe, to recover the sum of $545, alleged to be the balance due for services performed by him as watchman and cook on the De Laney oil and gas lease in section 19, township 21 north, range 7 west, in Claiborne parish, La. He averred that Act No. 171 of 1928, and Act No. 134 of 1880, as amended by Act No. 172 of 1928, created a lien and privilege in his favor and against the De Laney lease, well, rig, machinery, and appurtenances and appliances thereto attached, to secure the payment of his claim. A writ of provisional seizure was issued at his instance, and property on the lease was seized thereunder on December 7, 1929, as follows: 1 drilling rig complete; 1 Kelly joint; 110 joints 4" drilling stem; 13 joints 3" drilling stem; 2 Mud Hog pumps; 1 boiler; 2 water oil pumps; 1 Ford truck.

Further proceedings in due course resulted in plaintiff dismissing the case against Steinau as of nonsuit, and obtaining judgment against Wilder and Tharpe, in solido, for the amount sued for, with recognition of his lien and privilege, maintaining the writ of provisional seizure and ordering the property under seizure sold to satisfy his demand.

A few days thereafter (on February 11, 1930) the plaintiff provoked the issuance of a writ of fieri facias and caused the sheriff to seize property on the lease described as follows: 1 Ideal twin engine; 1 Titusville Iron Works boiler; 1 6-4-6 pump; 2 Ideal Mud Hog pumps; 1 line shaft and drum; 200 feet bull rope; 1 travelling block, C-link and hook; 12 joints 2-inch pipe.

The sheriff advertised the property seized under the fieri facias to be sold on March 15, 1930, as that of the defendants Wilder and Tharpe.

On March 1, 1930, the Louisiana Iron & Supply Company filed an intervention and third opposition in which it set up a chattel mortgage, executed by the judgment debtors, as superior in rank to the alleged lien and privilege of the plaintiff, and affecting a portion of the property advertised for sale as follows: 1 National mud pump, steam-driven, 12x6¾-14, No. 2317 (Union Tool); 1 National mud pump, steam-driven, 12x6¾-

14, No. 2318 (Union Tool); 1 steam-driven Ideal engine, two-cylinder (twin engine) 9x9.

The intervener and third opponent prayed that the property described as being subject to its chattel mortgage be separately appraised and sold, and the proceeds thereof be held pending further orders of the court.

The plaintiff filed an answer in which he denied no allegation of the petition of intervention and third opposition; but averred that the sheriff had released the alleged mortgaged property from seizure because the intervenor and third opponent had made an affidavit that the said property belonged to it; and reconvened for damages for the loss of the amount of his judgment, and $600 in addition thereto.

The sheriff, pursuant to the order of the court, separately appraised and sold the property alleged to be subject to the chattel mortgage; and on January 10, 1931, judgment was rendered in favor of the intervener and third opponent and against the plaintiff, the defendants, and the sheriff, recognizing the lien and privilege resulting from the chattel mortgage, and ordering that the intervener and third opponent to be paid by preference and priority over all other creditors, out of the proceeds of the sale. From this judgment the plaintiff appealed.

The chattel mortgage relied on by the Louisiana Iron & Supply Company, intervener and third opponent, was executed by the defendants B. M. Wilder and L. C. Tharpe on December 14, 1928, and was duly recorded the following day. It was shown on the trial of the intervention and third opposition that the indebtedness secured by the mortgage had not been paid, and that the property under seizure which had been separately appraised and sold was the identical property described in the mortgage instrument.

The labor of plaintiff having been admittedly performed long after the chattel mortgage became effective, the intervener and third opponent contends that the lien resulting from the chattel mortgage is superior to the laborer's lien, as the latter subsequently arose.

"That every mortgage shall be a lien on the property mortgaged from the time same is filed for recordation, which filing shall be notice to all parties of the existence of such mortgage, and said lien shall be superior in rank to any privilege or lien arising subsequently thereto." Section 4, Act No. 198 of 1918.

The position of the intervener and third opponent is probably correct in this, but it is unnecessary here to determine that question, as the record does not sustain the contention that plaintiff had a lien on the property here in question, or on any other property on the De Laney lease.

The plaintiff expressly relied as a basis for his lien, on Act No. 171 of 1928, and Act No. 134 of 1880, as amended by Act No. 172 of 1928.

In order to avail himself of the lien created by the former act, it was necessary for the plaintiff to allege and establish that the labor he performed was in the nature of service in the operation of an oil and gas well or wells. This the plaintiff failed to do. In fact, the record discloses that plaintiff's labor was done in the furtherance of a deep test, or drilling project for oil, which never succeeded. J. R. Wesson v. John Woodley, Inc., 139 So. 676, 679, decided by this court on February 16, 1932, and as yet unreported [in State report].

What we said in Wesson v. Woodley, supra, as to the lien created by Act No. 134 of 1880, as amended by Act No. 172 of 1928, is equally applicable here.

"The most that can be said about the lien created by this act in favor of laborers in the drilling of oil or gas wells is that the lien attaches to the well only, not the drilling rig or machinery or other paraphernalia and appliances connected with the well, such as were seized in this case. The well was not seized, and it was the only thing apparently under the statute that could have been seized."

The reconventional demand of plaintiff against the intervener and third opponent is without foundation in law or in fact. It is based on the allegation that the intervener and third opponent wrongfully made an affidavit that it owned the property seized under plaintiff's writ, causing the release thereof by the sheriff. No such affidavit appears in the record. A claim of ownership of the property by the intervener and third opponent would be utterly at variance with its real position in the case, which was that of mortgage creditor, urging its separate appraisement and sale.

On February 27, 1930, Tom Marlin filed an affidavit that he was the owner of the drilling rig, equipment, tools, and other appliances belonging thereto, situated on the De Laney lease and in the possession of Wilder and Tharpe. The property was then under seizure, and the evident purpose of the affidavit was to cause the sheriff to demand and secure an indemnity bond from the plaintiff or release the property. On March 1st, the sheriff not having secured bond or released the property, Tom Marlin applied to the court for a preliminary writ of injunction, to restrain the plaintiff and the sheriff from selling his alleged property for the purpose of paying plaintiff's judgment. Before the day set for hearing on the rule for the preliminary writ of injunction, the sheriff released from seizure that part of the property of

which Marlin claimed the ownership; and there remaining no further necessity therefor, Marlin dismissed his suit for an injunction.

In the meantime, however, the plaintiff had filed an answer to the injunction proceeding, and set up therein a reconventional demand for damages against Marlin for the amount of his judgment and $600, founded upon the allegation that Marlin, in making the affidavit that the property belonged to him, had caused it to be released from seizure.

The plaintiff insisted on a trial of his claim for damages in reconvention, which was duly had, and resulted in a judgment rejecting his demand. The question of the correctness of this judgment is presented to us for review by the appeal of plaintiff.

■ Marlin, the defendant in reconvention, urges our consideration of an exception of no cause or right of action levelled at the reconventional demand which was overruled by the trial judge. As the judgment was in favor of Marlin, and he has not answered the appeal, we will not review the action of the trial judge on the exception.

On the trial of plaintiff's reconventional demand on the merits, it was established that Marlin was the owner of all of the property on the lease except that which the defendants Wilder and Tharpe had purchased from and mortgaged to the Louisiana Iron & Supply Company. There was no evidence adduced showing a contrary state of facts.

■ The counsel for plaintiff contends that evidence should not have been permitted to be introduced over his objection, showing ownership in Marlin, for the reason that Marlin had dismissed his suit for an injunction.

Marlin, not being permitted by law to plead a defense to the reconventional demand, was in a position to adduce, on the trial, evidence of any fact which tended to defeat it. And of course ownership in Marlin was a complete and conclusive defense to plaintiff's demand for damages. To hold otherwise would be in effect taking the position that one should be penalized for asserting his rights to property through legal channels.

■ But, even if it be conceded that Marlin caused plaintiff damages, none was proven on the trial of the case. The plaintiff seems to rely for recovery upon the asserted right to statutory damages flowing from the dismissal of the suit for an injunction. In this connection, we quote his counsel as follows: "We therefore find that Tom Marlin secured the effect of an injunction and then took a nonsuit and dismissed his case after he secured a release of the property. He therefore voluntarily accepted the results of having his injunction 'dissolved'. When an injunction is dissolved the plaintiff in injunction is liable to damages."

It is enough to say that no injunction was issued, and therefore none could have been dissolved by dismissal or otherwise.

If there is an action sounding in damages arising out of the facts in this case, it would lie against the plaintiff and in favor of Marlin. The plaintiff illegally provoked the issuance of a writ of provisional seizure, as he had no lien upon which to found it. He caused the issuance of a writ of fieri facias, and, under both writs, unlawfully seized Marlin's property.

For the reasons assigned, the judgments appealed from are affirmed.